IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| AMANDA JONES,<br><br>*Plaintiff*,<br><br>v.<br><br>WAL-MART STORES EAST LP,<br><br>*Defendant*. | CIVIL ACTION NO.<br>5:17-cv-00100-TES |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Wal-Mart Stores East LP's Motion for Summary Judgment [Doc. 28]. After reviewing the parties' submissions, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 28].

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence would allow a reasonable jury to return a verdict for the nonmovant and a fact is material if it "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering this motion, "the evidence of the [nonmovant] is to be believed, and all justifiable inferences are to be drawn in [the nonmovant's] favor." *Id.* at 255. However, the Court need not draw "all possible inferences" in favor of the nonmovant. *Horn v. United Parcel Servs., Inc.*,

433 F. App'x 788, 796 (11th Cir. 2011).

The movant "bears the initial burden of informing the district court of the basis for its motion[] and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (internal quotation omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant "to rebut that showing by producing affidavits or other relevant and admissible evidence beyond the pleadings." *Jones*, 683 F.3d at 1292 (quoting *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2012)). The Court recounts the facts of this case below in light of this standard.

### **FACTUAL BACKGROUND**

This premises liability case arises out of an injury Plaintiff Amanda Jones sustained when she tripped over a pallet while she was picking up donated food items from Defendant's facility. At the time of the injury, Plaintiff worked as a truck driver for Middle Georgia Community Food Bank ("Middle Georgia"). [Doc. 30-1 at 20:19-21]. In this position, Plaintiff drove to a number of nearby businesses—including Defendant's—to pick up donated items for the food bank. [*Id.* at 44:8-10]. Plaintiff held her position with Middle Georgia for three years prior to the incident giving rise to her claim and during

that time picked up donations from Defendant's facility three days a week.[1] [*Id.* at 47:6-8; 50:1-2].

In the deposition taken on August 15, 2016, Plaintiff described at length her routine for making a pick up at Defendant's facility. *See* [*id.* at 47:12—59:25]. On arrival, Plaintiff would back her truck up to the loading dock and then enter the facility through a rear door into Defendant's receiving area where products were delivered and stored. [*Id.* at 47:9-16; 48:2-4]; *see also* [Doc. 30-2 at 124:3-14]. Defendant usually donated a substantial amount of food, so Plaintiff would find a pallet jack to facilitate loading the donated goods onto her truck. [Doc. 30-1 at 47:18-21; 52:9-12]. Once Plaintiff procured her pallet jack, she would exit the receiving area through a set of double doors into the public area of Defendant's facility. [*Id.* at 48:8-10]. Plaintiff would then drag her pallet jack through the public area of the store to another set of double doors leading to the dry goods receiving area where Defendant placed its donations at a designated spot. [Doc. 30-2 at 108:24—109:7]; *see also* [Doc. 30-1 at 49:1-3]. Plaintiff would then load her pallet jack and return to the other receiving area where she parked her truck. [Doc. 30-1 at 53:14—54:16]. Plaintiff testified that she often walked backward while pulling the pallet jack because it made it easier to move. [Doc. 30-2 at 114:6-14]. Plaintiff noted, though, that if she was walking backward, she was constantly looking over her shoulder to avoid bumping into

---

[1] In other words, Plaintiff had likely picked up donated food from this location (ostensibly in the same fashion as on the day she was hurt) at least 450 times.

customers or goods that may have fallen from the shelves in the store. [*Id.* at 117:12-15; 119:5-17]. After returning to the receiving area, Plaintiff would load her truck and return the pallet jack. [Doc. 30-1 at 54:6-19].

On the day of the incident, Plaintiff followed her customary practice for picking up donated goods at Defendant's facility. [Doc. 30-2 at 113:15-18]. However, on this day, Defendant placed a pallet with a box on it by the double doors leading from Defendant's receiving area into the public area of the store.[2] [Doc. 30-2 at 142:13-19]. Plaintiff admits that she walked by the pallet and that it was not hidden for someone walking out of the receiving area into the public area of Defendant's store but denies she actually saw the pallet. [Doc. 30-2 at 142:13-19; 152:13-14; 210:3-9].[3]

Plaintiff's injury occurred as she was re-entering the receiving area with her loaded pallet jack when she tripped over the pallet Defendant had placed by the double doors. [Doc. 30-2 at 142:13-19]. Plaintiff admits that when she arrived at the double doors leading to the receiving area, she looked through their windows to ensure that it was safe for her to enter but again denied seeing the pallet that she tripped on. [*Id.* at 180:1-6]. After looking through the window, Plaintiff walked backward through the double doors pulling the pallet jack with her. [*Id.* at 133:20—134:16]. Plaintiff testified that she did not

---

[2] The record does not specify if Defendant had ever placed pallets full of boxes near the double doors in question before or if this was the first time.

[3] The parties agree that the pallet had been there for at least six hours at the time Plaintiff was injured. [Doc. 34-1, at 2; Doc. 28-1, at 9].

see the pallet as she walked through the doors because it was on her left side and she was looking over her right shoulder as she entered the receiving area. [*Id.*]. When the pallet jack was about half way through the doorway, Plaintiff's heel hit the pallet, causing her to fall. [*Id.* at 186:7-10; 188:19-20].

As a result of her fall, Plaintiff incurred approximately $13,000 in medical expenses as well as lost wages. [Doc. 1-3 at p. 2]. Plaintiff has received some compensation for these damages as part of her worker's compensation settlement and she now asserts claims against Defendant for allegedly negligently placing the pallet next to the double doors. [Doc. 30-2 at 96:4-7].

## **DISCUSSION**

After reviewing the parties' submissions, the Court finds that Defendant is entitled to summary judgment. Under Georgia law,

> [w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

Ga. Code Ann. § 51-3-1. But owners and occupiers of land are not insurers of their invitees' safety. *Bonner v. S. Rest. Grp., Inc.*, 610 S.E.2d 129, 132 (Ga. Ct. App. 2005). Accordingly, plaintiffs in this type of premises liability case "must prove that (1) the defendant had actual or constructive knowledge of the hazard, and (2) the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions

5

within the defendant's control." *Id.* at 132. The parties agree that Defendant in this case had knowledge of the pallet, so the first element is clearly satisfied.

The parties dispute, however, whether Plaintiff lacked knowledge of the allegedly hazardous condition. Although Plaintiff denied having seen the pallet prior to tripping on it, the facts of this case require the Court to presume that she had knowledge of the condition prior to her fall because the pallet was a static condition that was open and unobstructed that Plaintiff had previously negotiated without incident. *See* [Doc. 30-2, at pp.136-37 ¶¶24-1; p.151 ¶¶17-19]. Moreover, the Court finds that Plaintiff failed to exercise reasonable care as a matter of law when she walked backward into the receiving area despite her knowledge of the potential hazards in that area.

**I. Static Condition**

At the outset, the Court agrees with Defendant that the pallet was a static condition. Georgia law defines a static condition as "one that does not change and is dangerous only if someone fails to see it and walks into it." *Rentz v. Prince of Albany, Inc.*, 797 S.E.2d 254, 256 (Ga. Ct. App. 2017) (quoting *LeCroy v. Bragg*, 739 S.E.2d 1 (Ga. Ct. App. 2013). In *Rentz*, the Georgia Court of Appeals held that a cornhole set at a car dealership was a static condition because it was readily visible, and the plaintiff in that case would have seen it if she had looked down. *Rentz*, 797 S.E.2d at 258. The court reached this conclusion notwithstanding the fact that the cornhole set could be easily moved. *Id.* at 257. Like the corn hole set in *Rentz*, the pallet in this case was open and visible from the

receiving area, and if Plaintiff had looked in its general direction as she was exiting the receiving area, she would have seen it. Accordingly, the Court finds that the pallet was a static condition.

**II. Plaintiff's Knowledge of the Allegedly Hazardous Condition**

The Court also agrees with Defendant that it may presume that Plaintiff had knowledge of the allegedly hazardous condition. When a hazardous condition is appropriately classified as a static condition, the Court may impute knowledge of the condition to a plaintiff under certain circumstances. Pertinent to this case is the "prior traversal rule" which allows the Court to presume that a plaintiff had knowledge of a hazardous condition if the condition is readily discernable and the plaintiff had "successfully negotiated the alleged dangerous condition on a previous occasion." *Rentz*, 797 S.E.2d at 257 (quoting *Nemeth v. RREEF Am., LLC*, 643 S.E.2d 282 (Ga. Ct. App. 2007)). *See also Cocklin v. JC Penney Corp.*, 674 S.E.2d 48 (Ga. Ct. App. 2009) (discussing requirement that hazard must be "readily discernible"). Defendant argues that the prior traversal rule is applicable here because the pallet was a static condition that Plaintiff could have readily discerned as she left the receiving area. [Doc. 28-1, at 21-22]. In response, Plaintiff argues that whether the pallet was "readily discernible" is a fact question not susceptible to summary adjudication. [Doc. 34-1, at 9]. Plaintiff further argues that she could not have successfully negotiated the hazard because "[o]ne cannot 'safely negotiate' a hazard that they did not actually first observe then avoid, i.e., step

7

over or around." [*Id.* at 10]. The Court agrees with Defendant that it can be presumed that Plaintiff had knowledge of the hazardous condition based on the prior traversal rule. As noted above, the Court finds that the pallet was a static condition. Accordingly, the Court must resolve whether the pallet was "readily discernible" and whether Plaintiff had "successfully negotiated" the hazard on a prior occasion.

The Court first addresses whether the pallet was readily discernible and finds that it was. Plaintiff admitted in her deposition testimony that people entering and exiting the receiving area would have been able to "clearly see" the pallet.[4] She further admitted that the receiving area was well-lit and that the pallet was not placed by the door after she left the receiving area. [Doc. 30-2 at 116:19-20; 162:7-18]. In short, Plaintiff offers no evidence—or even allegations—that the pallet was not "readily discernible" when viewed from the receiving area.

Plaintiff's best case on this issue is *Cocklin v. JC Penney Corp.* in which a plaintiff that tripped on a crevice in the floor appealed the trial court's grant of summary judgment based on the prior traversal rule. 674 S.E.2d at 51. The Georgia Court of Appeals reversed and held that whether the crevice was readily discernible was a fact question for the jury. *Id.* But, the Court finds that *Cocklin* is distinguishable. Specifically, the plaintiff in *Cocklin*

---

[4] Ms. Rogers: Okay. And [] the Wal-mart employees going in and out could have clearly seen the pallet there?
Plaintiff: I suppose, yes.
Ms. Rogers: So you could have clearly seen the pallet there, right?
Plaintiff: Yeah.
[Doc. 30-2 at 210:3-9].

8

provided evidence that the condition was not readily discernible through her testimony that she "could not see [the condition] until conducting a close, visual and tactile inspection of the area." *Id.* The plaintiff's expert also provided an expert who testified that "[y]ou have to get down on the floor to fully observe and appreciate" the hazardous condition. *Id.* By contrast, Plaintiff in this case has provided no evidence that would permit a jury to find that the pallet was not readily discernible and, as mentioned above, actually testified that the pallet was clearly visible. Consequently, the Court finds that the pallet was readily discernible.

The next question is whether Plaintiff "successfully negotiated" the pallet on a prior occasion. Georgia courts have not defined in precise terms what it means for a plaintiff to have "successfully negotiated" a hazard, but it is clear to the Court that a plaintiff does not need actual knowledge of the hazard for the Court to conclude that he or she has successfully negotiated it as Plaintiff suggests. *See* [Doc. 34-1, at 10]. Indeed, the Court in *Rentz* rejected this very argument. In that case, the plaintiff admitted that she must have walked past the hazard several times but denied having actual knowledge of it. 797 S.E.2d at 257-58. Based on the plaintiff's having walked by the hazard multiple times, the court presumed she had knowledge of the hazard. *Id.* The Court went on to conclude that the plaintiff could not "overcome this presumption by arguing that she never saw the [hazard] because . . . '[i]f nothing obstructs the invitee's ability to see the static condition, the proprietor may safely assume that the invitee will see it and will

9

realize any associated risks.'" *Id.* (quoting *LeCroy v. Bragg*, 739 S.E.2d 1, 3 (Ga. Ct. App. 2013)). Like the plaintiff in *Rentz*, Plaintiff walked by the hazard on a prior occasion but lacked actual knowledge of the allegedly hazardous condition. Despite Plaintiff's lack of actual knowledge, however, the Court, guided by the *Rentz* decision, must conclude that Plaintiff "successfully negotiated [the pallet] on a previous occasion." *Id.*

Because Plaintiff concedes that the pallet was "readily discernable" and that she walked past it on a previous occasion, the Court presumes that she had knowledge of the risk of harm posed by the pallet. Accordingly, Plaintiff cannot satisfy the requirement that she did not have knowledge of the harm at the time she was injured. *See Bonner*, 610 S.E.2d at 132.

### III. Plaintiff's Exercise of Reasonable Care

The Court also finds that Plaintiff's claim is appropriately dismissed because she failed to exercise reasonable care when she walked backward through the doors. Although the parties discuss this in terms of assumption of the risk, Georgia courts tend to characterize this type of conduct as contributory negligence. *See Becton v. Tire King of N. Columbus, Inc.*, 539 S.E.2d 551, 553 (Ga. Ct. App. 2000) ("[W]e find that the evidence is plain and palpable that, by walking blindly backward in a store which she had not visited before, [the plaintiff] failed to exercise the prudence of an ordinarily careful person."). The question for purposes of this case is whether "the evidence is plain and palpable"

that Plaintiff failed to exercise ordinary care when she walked backward into the receiving area. The Court concludes that it is.

The Court acknowledges that whether a party has exercised reasonable care is typically not appropriate for summary adjudication. However, the Georgia Court of Appeals has held that summary adjudication is appropriate in cases where a plaintiff, walking backward, tripped over a static condition. *See, e.g.*, *Becton*, 539 S.E.2d at 553; *Carey v. W.R. Grace & Co., Conn.*, 472 S.E.2d 524, 526 (Ga. Ct. App. 1996); *LeCroy*, 739 S.E.2d 1 (Ga. Ct. App. 2013).

For example, in *Becton*, the plaintiff was an invitee at a tire store and, while purchasing tires, took a step backward and tripped over a planter. 539 S.E.2d at 553. The trial court granted summary judgment for the defendant and the plaintiff appealed. *Id.* In affirming the trial court, the Georgia Court of Appeals held that the evidence was "plain and palpable" that the plaintiff did not exercise ordinary care because she stepped backward in a store that was unfamiliar to her without first looking to ensure that there was nothing behind her. *Id.* The Court of Appeals did note that "[f]ailure to look does not necessarily constitute failure to exercise ordinary care," but ultimately concluded that it did in this case where the plaintiff moved backward without knowing what was behind her. *Id.* The facts of this case are similar to *Becton* in that the "fluid" nature of the receiving area meant that every trip there was tantamount to visiting an unfamiliar premises. *See* [Doc. 30-2 at 125:21-23; 126:10-14]. Indeed, this is a more compelling case than *Becton* for

11

finding that Plaintiff did not exercise ordinary care when she walked backward into the receiving area because Plaintiff actually knew that the receiving area was constantly changing and that the changes resulted in open and obvious hazards that could be avoided by paying attention where she walked. *See* [*id.* at 127:2-5; 131:10-17; 137:13-25].

The Court also finds *Carey* instructive on this point. In that case, the plaintiff was a truck driver picking up products from the defendant's facility. 472 S.E.2d at 525. The plaintiff, while helping one of the defendant's employees move a loading ramp, walked backward, tripped, and fell over a pallet. *Id.* The Court of Appeals held that summary judgment for the defendant was appropriate because, by walking backward without fully investigating potential hazards, the plaintiff failed to exercise ordinary care for his own safety. *Id.* at 526. In reaching this decision, the *Carey* court placed particular emphasis on the fact that the plaintiff looked around before proceeding backward, thereby indicating his "awareness of the need to look out for his own safety before proceeding." *Id.* Likewise, Plaintiff admits that she made a conscious effort to examine the area that she was walking through prior to proceeding backward through the doors thereby indicating her own awareness of the risk of walking backward through the receiving area. *See* [Doc. 30-2, at p.119 ¶¶22-24; p.120 ¶¶11-13; p.133 ¶¶8-13].

In light of *Becton* and *Carey*, the Court concludes that, as a matter of law, Plaintiff was not exercising ordinary care when she walked backward into the receiving area with

full knowledge of its hazardous and constantly changing conditions. Accordingly, Defendant is entitled to summary judgment on Plaintiff's negligence claim.

## CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendant's Motion for Summary Judgment [Doc. 26].

**SO ORDERED** this 21st day of December, 2018.

                                        **S/ Tilman E. Self, III**
                                        **TILMAN E. SELF, III, JUDGE**
                                        **UNITED STATES DISTRICT COURT**